Clerk of the
IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| **Candace E. Alston** | ) |
| 10012 Cedar Hollow Lane | ) |
| Largo, MD 20774 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **Thomas Alston** | ) |
| 10012 Cedar Hollow Lane | ) |
| Largo, MD 20774 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **Monarch Bank** | ) |
| **Serve:** The Corporation Trust Incorporated | ) |
| 351 West Camden Street | ) |
| Baltimore, MD 21201 | ) |
| | ) |
| | ) |
| Defendant. | ) |

2016 FEB 23  PM 1: 49

PR GEO CO MD # 99

CASE NO. CAL16-04356
**JURY TRIAL DEMANDED**

**COMPLAINT
AND JURY DEMAND**

COMES NOW the Plaintiffs, Thomas Alston and Candace E. Alston, and for their complaint against the Defendant Monarch Bank ("Monarch"), alleges as follows:

**PRELIMINARY STATEMENT**

1.     This is an action for a consumer seeking actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act or "FCRA"), Real Estate Settlement Procedures Act, 12 U.S.C. §2605 *et seq* ("RESPA") and common law tort of conversion.

Case: L16-04356
CV CLERK FEE-                      80.00
FCV FICRASERY                      55.00
RIF - NEW CAS                      30.00
TOTAL                             165.00
Rcst PG11       Rcpt # 12948
SJH    AMK      Blk # 2726
Feb 23, 2016              01:39 PM

**PARTIES**

2.     The plaintiffs are natural persons and reside in the state of Maryland.

3.     Monarch, together with its subsidiaries, offers commercial and retail banking, investment and insurance sales, and mortgage origination and brokerage services.

1

4.    On August 17, 2015 Plaintiff sent DMI a letter that contained a payment to satisfy the debt in full. Plaintiff sent the letter to DMI's corporate address where it requests borrowers to send qualified written requests. Specifically, the letter stated:

> Enclosed is a $5,000 payment to satisfy the debt in full. Also enclosed is a draft of a lawsuit containing some of my claims against Monarch Bank. If the enclosed payment is accepted as full satisfaction of the debt, then I agree to waive any and all claims I have against Monarch Bank and Dovenmuehle. The remaining outstanding debt on the Note is approximately $94,000. A fair estimate of my damages easily exceed the outstanding debt. Therefore, my offer to satisfy the debt in full for $5,000 as an accord and satisfaction of the debt is a very fair and reasonable offer. If the offer is accepted then retain the check. If the offer is not accepted then return the check to me.

5.    DMI and/or Monarch received and processed the payment on August 20, 2015 The payment was a personal check which on the face of the check stated "Accept this payment in full satisfaction of debt" and further stated "see accompanying letter" which was stapled to the check. Written in the memo (or "for") section of the check was "Accord and Satisfaction."

6.    Monarch's and/or DMI cashing and/or depositing of the $5,000 payment was acceptance of Plaintiff's offer to pay the debt in full in exchange for waiving her legal claims against Monarch and DMI.

7.    Because Monarch accepted Plaintiff's payment as full satisfaction of the debt, Plaintiff recognized that her claims were waived against Monarch and DMI and did not file suit against Monarch and DMI.

8.    Despite Plaintiff's payment in full satisfaction of the debt, Monarch and/or DMI sent Plaintiff a Delinquent Notice that asserted Plaintiff did not make her October 1, 2015 mortgage payment.

9.    Monarch continued to attempt collection on the debt obligation in November 2015, December 2015 and January 2016.

10.     Monarch reported Plaintiff delinquent to Equifax and Trans Union for the months of October 2015, November 2015, December 2015 and January 2016.

11.     On December 2, 2015 the Plaintiff filed an amended complaint against Monarch in the U.S. District Court for the District of Maryland in Greenbelt Maryland.

12.     The Federal complaint alleged, *inter alia*, that Monarch violated RESPA and FCRA by reporting derogatory information to a credit reporting agency after receiving Plaintiff's qualified written request disputing the derogatory information and reporting the information without notating the report was disputed.

13.     Monarch is well aware of the foregoing allegations in the amended complaint as it filed an Answer the amended complaint on January 13, 2016.

14.     Despite receiving Plaintiff's amended complaint, which pointed out Monarch's failure to cease reporting on disputed information and failing to notate Plaintiff's dispute, the Defendant continues to report information regarding the disputed payments within the prohibited 60 day period and it continues to report the information without notating the dispute.

15.     Plaintiff's Federal amended complaint was further *actual* notice that Monarch was violating RESPA and FCRA and is further proof that Monarch is intentionally violating the FCRA and RESPA.

16.     On January 26, 2016 the Plaintiff contacted Monarch and asked if they could "come to an agreement where [she is] making payments, under protest and without prejudicing [her] claim, so that no further foreclosure action or derogatory credit reporting" continues.

17.     By letter dated January 27, 2016 Monarch advised Plaintiff that it was not interested in Plaintiff's proposed arrangements to make payments on the mortgage account.

18.     Plaintiff's offer to make mortgage payments under protest for purposes of mitigating her damages was a reasonable offer.

19.     Defendant's rejection of Plaintiff's offer and Defendant's subsequent derogatory reporting without any indication that Plaintiff offered to make payment and that the non-payment is the result of a legal dispute, not financial irresponsibility, is an act of bad faith. The Defendant knows Plaintiff is seeking to obtain a loan to purchase a home. And the Defendant knows that the Plaintiff cannot qualify for a home loan while Monarch is reporting her currently delinquent. Upon information and belief Monarch continues to report derogatory information during RESPA's 60 day prohibited period as a means of leverage to coerce and manipulate Plaintiff into damaging or abandoning her claim. Likewise, Monarch continues to report the derogatory information without notating the dispute because Monarch wishes to use the negative reporting to coerce Plaintiff into damaging or abandoning her claim.

20.     On January 29, 2016 Plaintiff sent Monarch a letter in which she disputed that she was delinquent on her October 2015, November 2015, December 2015 and January 2016 mortgage payments.

21.     Plaintiff's letter asserted that the account was incorrectly considering her late on her mortgage for October 2015 to January 2016. In her letter the Plaintiff explained the basis for her claim that the mortgage was not late. Specifically, the Plaintiff stated the debt was satisfied in full on August 20, 2015 when Monarch accepted Plaintiff's offer to settle the debt in full.

22.     Monarch received Plaintiff's letter on February 8, 2016.

23.     Within 60 days of February 8th 2016, which is the day Monarch received Plaintiff's January 2016 letter, the Defendant reported to Equifax and Trans Union that the Plaintiff was late on her mortgage payments for October 2015 thru January 2016.

4

24.    On February 9, 2016 the Plaintiff sent dispute letters to Equifax and Trans Union wherein she disputed being late on her mortgage payments for October 2015 to January 2016.

25.    Upon information and belief Equifax forwarded notice of Plaintiff's dispute to Monarch, who responded to the dispute by simply verifying that the account was currently being reported consistently with prior reporting.

26.    Monarch's verification procedure does not consider the merits of the actual dispute and is not a reasonable investigation designed to uncover inaccuracies in its reporting.

27.    Additionally, Monarch did not notate that Plaintiff disputed the reporting of the account. Based on Monarch's consistent failure over the years to notate Plaintiff's account as disputed, Plaintiff believes Monarch never flags an account as disputed and maintains a blanket policy not to notate disputed accounts as disputed.

## COUNT ONE: VIOLATIONS OF RESPA

28.    Plaintiff incorporate paragraphs 1 - 27 by reference.

29.    Plaintiff submitted letters that constituted "qualified written requests" or "QWRs" under 12 U.S.C. §2605(e)(1)(B). Plaintiff's letters contained her name, account number and statements of Plaintiff's reasons for belief that the account was in error.

30.    Defendant Monarch violated 12 U.S.C. §2605(e) by failing to take reasonable actions and make appropriate corrections to Plaintiff's account after receiving Plaintiff's QWRs.

31.    Monarch violated §2605e(3) by providing information to Equifax and Trans Union regarding purportedly delinquent payments within 60 days of receiving the QWR.

32.    Defendant's violations are numerous and consistent, constituting a "pattern or practice" of noncompliance with the requirements of 12 U.S.C §2605 *et seq*. Upon information

and belief, in addition to Defendant's consistent violations of Plaintiff, the Defendant has also inadequately responded similarly to other consumers after receiving those consumers OWRs.

33.      As a result of the conduct, actions and inactions of Monarch, the Plaintiff has suffered actual damages including without limitation, by example only and as described herein by Plaintiff: reduced credit score, damage to her financial reputation, loss of credit opportunity and credit denials, mortgage fees and costs, dealing with foreclosure threats, fear of losing her property, stress and anxiety, frustration, humiliation, emotional and mental distress, and physical sickness such as headaches, depression, insomnia, and tension with her family and friends.

34.      Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the jury pursuant to 12 U.S.C. §2605f(1)(A), statutory damages pursuant to 12 U.S.C. §2605f(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. §2605f(3).

## COUNT TWO: VIOLATION OF FCRA

35.      Plaintiff incorporates paragraphs 1 - 34 by reference.

36.      Plaintiff's claim that the debt was satisfied after her payment of $5,000 to Defendant in August 2015 was bona fide.

37.      Plaintiff made her $5,000 payment and forbearance to sue offer in good faith.

38.      Plaintiff honestly believed she had substantial legal claims against the Defendant and that a waiver of those legal claims justified a substantial offset to the mortgage debt.

39.      Plaintiff conservatively calculates her damages for waived legal claims easily exceeded the amount of her outstanding mortgage obligation with Monarch.

40.     Plaintiff sent her payment with clear instructions that the payment was intended to pay the debt in full and operate as a waiver to her legal claims against Monarch. Included with the payment was a draft of a lawsuit that spelled out Plaintiff's claims against Monarch.

41.     Plaintiff did not attempt to trick the Defendant into accepting her $5,000 check. She did not send it to Monarch's payment processing center in Pittsburg Pennsylvania where the Defendant's employees are not trained to review the correspondence and only focus on processing payments. Rather, Plaintiff mailed the payment to DMI's headquarters at 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047-8945, which is the designated address for inquires and correspondence other than mortgage payments. Upon information and belief Plaintiff's accord and satisfaction offer was processed by a representative with authority to process such offers.

42.     Plaintiff has never received any correspondence from Monarch that designated a specific contact person for Plaintiff to send an accord and satisfaction offer. Furthermore, Plaintiff called the contact number listed on Monarch's mortgage statement and was advised by a Monarch representative that an accord and satisfaction offer should be sent to on 1 Corporate Drive Suite 360 Zurich IL 60047.

43.     Plaintiff's claim that the $5,000 payment and legal forbearance satisfied the debt in full was a legitimate basis for her to consider the debt paid and to stop making monthly payments. If Plaintiff's allegations are true, then the mortgage obligation was indeed satisfied under the doctrine of accord and satisfaction.

44.     A reasonable investigation of Plaintiff's dispute would have led Monarch to discover that the debt obligation was paid in full when Monarch's processed of Plaintiff's $5,000 check. If Monarch had conducted a reasonable investigation, it would have learned that Monarch's decision to negotiate the check constituted an acceptance of Plaintiff's offer.

45.     Either Monarch failed to conduct a reasonable investigation or Monarch failed and/or refused to accurately report the results of its investigation.

46.     At a minimum Monarch should have reported that the account was disputed.

47.     Defendant's failure to reasonably investigate Plaintiff's dispute is a violation of FCRA at 15 U.S.C. §1681s-2(b)(1)(A)-(E), which requires a furnisher of information to conduct a careful inquiry of a consumers dispute, rather than a superficial inquiry that merely verifies the information is being reported in the same manner as it was previously reported.

48.     Monarch systematically fails to correct inaccuracies in its reporting because it has a policy to ignore the consumers dispute and only focuses on whether its current reporting is consistent with its prior reporting. Therefore, Monarch does not investigate the actual issues raised in the Plaintiff's dispute. Rather, Monarch merely investigates whether its current reporting is reflective of its previous reporting.

49.     Monarch's failure to maintain and employ procedures to investigate the actual issues raised in a consumer's dispute is a willful or reckless violation of the FCRA.

50.     Defendant's failure to instruct Equifax and TransUnion to notate Plaintiff's bona fide dispute is a violation of FCRA at 15 U.S.C. §1681s-2(b)(1)(A)-(D), which requires a furnisher of information to note a Plaintiff's unresolved dispute.

51.     Since October 2013 the Plaintiff has disputed the subject mortgage account with Equifax and/or TransUnion on at least 10 different occasions and the Defendant has never reported the mortgage account as disputed.[1]

52.     Monarch will never notate a dispute because it either has a blanket policy to never notate disputes or it has no procedures or policies regarding noting disputes.

---

[1] Plaintiff's claims prior to August 17, 2015 were waived when Defendants accepted Plaintiff's offer of $5,000 to satisfy the debt obligation and resolve all claims between the parties.

8

53.     Monarch's failure to maintain and employ procedures to report accounts as disputed after receiving notice of a bona fide dispute is a willful or reckless violation of the FCRA. Alternatively, Defendants blanket policy to never notate an account as disputed is a willful or reckless violation of the FCRA.

54.     Pursuant to 15 U.S.C. §1681n, Defendant is liable for statutory and punitive damages, as well as attorney fees and costs, in an amount to be determined by the Court for violating 15 U.S.C. §1681s-2(b). In the alternative, Monarch was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

55.     As a result of the conduct, actions and inactions of Monarch, the Plaintiff has suffered actual damages including: reduced credit score, damage to her financial reputation, loss of credit opportunity and credit denials, stress and anxiety, frustration, humiliation, emotional and mental distress, and physical sickness such as headaches, depression, insomnia, and tension with her family and friends.

## COUNT THREE: CONVERSION
### (In the Alternative)

56.     Plaintiff reincorporates all the allegations above by reference.

57.     Plaintiffs sent Monarch a check in the amount of $5,000.

58.     The check was affixed to a letter that explained how the check was to be used.

59.     The Defendant is arguing that it did not use the check in the manner that Plaintiff instructed the Defendant to use the check.

60.     The Defendant's use of the check in a manner contrary to Plaintiff's clear instructions was an exercise of dominion of Plaintiffs' funds.

61.     The Defendant had no right to use the funds contrary to Plaintiffs' instructions.

62.     Defendant's argument that it converted Plaintiffs' funds and its obstinate position that it had right to convert Plaintiffs' funds, is evidence of its malevolent intent of its claim to have converted the funds.

63.     As a result of the conversion the Plaintiffs incurred damages.

64.     Defendant's conduct was the proximate cause of Plaintiffs' injuries, rendering Defendant liable for compensatory damages, actual damages and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in their favor for the following:

(a)     Permanent injunction be issued requiring Defendant to cease reporting misleading and inaccurate information to Equifax and Trans Union;
(b)     Permanent injunction be issued requiring Defendant to cease reporting derogatory information on disputed payments within 60 days of receiving a dispute of those payments;
(c)     Award $250,000 in compensatory and actual damages for Counts I-III;
(d)     Award $1,000,000 in punitive damages for Count II & III;
(e)     Award the maximum amount of statutory damages available under Counts I & II;
(f)     Award costs and reasonable attorney's fees and costs; and
(g)     Any such other relief the Court deems just, equitable and proper.

## DEMAND FOR TRIAL BY JURY

65.     Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

THOMAS ALSTON

Thomas Alston
10012 Cedarhollow Ln
Largo, MD 20774
Tel: (240) 432-0927
E-mail: talston@washlegal.com
*Pro Se Plaintiff*

10

CANDACE E. ALSTON

By: _____

Candace Elizabeth Alston
10012 Cedarhollow Lane
Largo, Maryland 20774
Telephone: (301) 350-5780
Email: candace.alston@gmail.com